DAVIS, *Petitioner,*

*v.*

# WASCO INTERMEDIATE EDUCATION DISTRICT
et al, *Respondents.*

(CA 9985)

583 P2d 1151

Robert D. Durham, Eugene, argued the cause for petitioner. With him on the brief was Kulongoski, Heid, Durham & Drummonds, Eugene.

John R. Faust, Jr., Portland, argued the cause for respondent Wasco Intermediate Education District. On the brief were Stanley G. Heisler, and Heisler, Van Valkenburgh & Coats, The Dalles. Assisting on the

brief were John R. Faust, Jr., and Hardy, McEwen, Weiss, Newman & Faust, Portland.

James A. Redden, Attorney General, and Al J. Laue, Solicitor General, Salem, waived appearance for respondent Fair Dismissal Appeals Board.

Before Schwab, Chief Judge, and Thornton, Judge, and Denecke, Judge Pro Tempore.

SCHWAB, C. J.

## SCHWAB, C. J.

Petitioner was employed by The Dalles School District No. 12 as a permanent teacher, *i.e.,* tenured. She taught "special education" classes, *i.e.,* a program for mentally handicapped children. School District No. 12 abolished its special education program and, by agreement with Wasco Intermediate Education District, transferred responsibility to provide special education classes to the IED.[1] Petitioner then became a special education teacher for the IED. After two school years with the IED, petitioner's contract was not renewed.

Petitioner appealed to the Fair Dismissal Appeals Board, contending she retained the permanent teacher status she enjoyed with School District No. 12 upon being transferred to the IED, and thus could only be dismissed for cause. The Board ruled to the contrary. We reverse.

Petitioner relies upon ORS 236.610, which provides:

"(1) No public employe shall be deprived of his employment solely because the duties of his employment have been assumed or acquired by another public employer, whether or not an agreement, annexation or consolidation with his present employer is involved. Notwithstanding any statute, charter, ordinance or resolution, but subject to ORS 236.610 to 236.650, the public employe shall be transferred to the employment of the public employer who assumed or acquired his duties, without further civil service examination.

"(2) As used in subsection (1) of this section, 'public employe' means an employe whose salary or wages is paid from public funds * * *.

"* * * * *"

ORS 236.620(1) and (3) provide:

"A public employer who receives a transferred employe under subsection (1) of ORS 236.610, including

---

[1] Intermediate education districts were renamed education service districts by Oregon Laws 1977, ch 481, § 1(2) (3).

[ 5 ]

an employe whose transfer is provided for by an agreement under ORS 190.010, shall place that employe on its employe roster, subject to the following:

"(1) If the employe was serving a probationary period with his employer at the time of transfer, his past service on probation shall apply on the regular probation requirement of the transferee employer.

"(3) The employe shall retain the seniority he accrued under his prior employment, but no regular employe of the transferee employer shall be demoted or laid off by reason of that seniority."

The parties agree that the IED "assumed or acquired" the duties of petitioner's employment within the meaning of ORS 236.610. The parties agree that, *if applicable,* ORS 236.610 and 236.620 provide that a permanent teacher who is transferred from one district to another retains his or her job security. The IED's sole contention is that, despite the broad definition of "public employe" in ORS 236.610(2), this statutory scheme is not applicable to teachers.

Five arguments are advanced in support of this conclusion. The first relies upon *District Court v. Multnomah County,* 21 Or App 161, 534 P2d 207 (1975). That case involved the question of the employment rights of the court administrator of the Portland Municipal Court when it merged with the Multnomah County District Court. We stated in part: "An employe who never had civil service status is not within the protection of ORS 236.610." 21 Or App at 165. The Fair Dismissal Appeals Board relied on this one sentence to conclude that ORS 236.610 is inapplicable to teachers because they are not *civil service* employes. In context, however, the quoted sentence only meant that a public employe without statutory job protection before being transferred remains in the same status after being transferred, *i.e.,* that since the court administrator did not have statutory job protection as a city employe before being transferred, he did not have statutory job protection as a county employe after being transferred.

[ 6 ]

The second argument is a variation on the first. The IED relies upon the part of ORS 236.610(1) which states that transferred employes do not have to take "further civil service examination," and argues that since teachers never take any form of civil service examination, the statutory scheme must be inapplicable to teachers. This phrase, however, can be reconciled with the balance of the statute which by its plain terms is applicable to teachers by reading it to mean: without having to go through further steps necessary to acquire statutory job protection.

Third, the IED relies upon the part of ORS 236.630(3) which states if "the transferee employer finds that no position exists, the employe shall be listed as a regular laid-off employe," and argues that since school districts are not required to maintain lists of laid-off teachers, the statutory scheme must be inapplicable to teachers. This clause, however, can be reconciled with the balance of the statute by reading it to mean: a transferred employe with statutory job protection who is laid off by the transferee employer for the reason stated in ORS 236.630(3) must be given priority when the transferee employer subsequently hires new employes. *Cf.* ORS 240.315.

We are not rewriting ORS 236.610 et seq. We interpret the statutes as expressing the broad policy that public employes whose duties are transferred from one public employer to another generally retain the same employment rights after being transferred. We are aware that the various statutory job protection schemes vary between state and local government, and vary between different local governments. *See Papadopoulos v. Bd. of Higher Ed.,* 14 Or App 130, 156-62, 511 P2d 854, *rev den* (1973), *cert den* 417 US 919 (1974). Indeed, the term "civil service examination" does not appear in the state merit system law. *See* ORS 240.330 ("the administrator shall from time to time conduct entrance tests and promotion tests"). Accordingly, we only conclude that the terminology of

ORS 236.610 et seq must be applied with some flexibility, consistent with its broad purpose, in various situations.

■ The IED's other arguments rely upon the interrelationship between ORS 236.610 et seq and the Fair Dismissal Law governing teacher employment and dismissal. The IED argues:

> "* * * The Fair Dismissal Law recognizes that permanent teacher status is a special professional status conferred upon qualified teachers at the discretion of *the employing district* * * *.
>
> "* * * * *
>
> "* * * [A] permanent teacher is defined by the Fair Dismissal Law as one who has been 're-elected' by the school district which has regularly employed that teacher for not less than three successive years before the year in which he is re-elected, ORS 342.815(4). The legislature simply did not intend to change that fundamental principle of teacher-school district relations by taking away the right of each school district to determine for itself whether teachers employed by it are to be elevated to permanent teacher status * * *." (Footnote omitted.)

Much of the balance of the IED's argument refers to teachers who *transfer* from one district to another, *i.e.,* voluntarily. The present problem involves teachers who are *transferred, i.e.,* due to circumstances beyond their control. Given that any other public employe with statutory job protection who is transferred under such circumstances retains his job security regardless of the desires of the transferee employer, we fail to see anything so unique about teachers as to warrant a separate result.

The IED's fifth and final argument also relies upon the Fair Dismissal Law, specifically ORS 342.865(1)(j), which provides in part: "School districts shall make every effort to transfer teachers of courses scheduled for discontinuation to other positions for which they are qualified." This, the IED claims, is inconsistent with interpreting ORS 236.610 et seq to provide for

transfer of petitioner's employment and employment rights to the IED in this situation. We see no inconsistency. The every-effort rule of ORS 342.865(1)(j) applies when the discontinuation of courses is due to any reason other than transfer of responsibility to another public employer. The transfer-of-rights rule of ORS 236.610 applies when the discontinuation of courses is due to transfer of responsibility to another public employer.

In sum, we find no persuasive reason for not following the plain words of ORS 236.610(2). School District No. 12 is a public employer. The IED is a public employer. At all times both employers paid petitioner's salary from public funds. ORS 236.610 preserved the job security rights petitioner had enjoyed with School District No. 12 upon her being transferred to the IED.

There is another issue which we note, but do not reach. Petitioner executed two "probationary teacher contracts" during the time she worked for the IED. Before the Fair Dismissal Appeals Board the IED argued this amounted to a waiver of petitioner's present claim to permanent teacher status. The Board never reached the issue because of its decision, erroneous we have concluded, that ORS 236.610 et seq does not apply to teachers. On appeal, petitioner argues it is legally impossible to contractually waive her statutory rights. The IED does not press the waiver issue before us.

We do not intend to foreclose further consideration of the waiver issue on remand.

Reversed and remanded.